UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN DEATHERAGE,<br><br>      Plaintiff,<br> v.<br><br>SCHINDLER ELEVATOR CORPORATION, ABC CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>      Defendants. | Case No. 3:16-cv-00206-MMD-VPC<br><br>ORDER |

## I.  SUMMARY

Before the Court are several motions in limine, including: (1) Plaintiff John Deatherage's motion in limine to bar testimony of Hanhtrinh M. Le (ECF No. 50); (2) Defendant Schindler Elevator Corporation's ("Schindler") motion in limine to exclude opinion testimony of Joseph Stabler (ECF No. 52); (3) Schindler's motion in limine to exclude causation opinion testimony of William Reid and Joel Norman (ECF No. 53); and (4) Schindler's motion in limine to exclude opinion testimony of Michael Freeman (ECF No. 54).[1] The Court has reviewed the parties' responses.[2] (ECF Nos. 60, 61, 63, 64.) For the following reasons, the Court denies Deatherage's motion in limine to bar testimony of

///

---

[1] The parties are reminded that they "should file one consolidated motion in limine instead of separate motions addressing a single evidentiary issue in each motion to avoid unnecessary filings" pursuant to this Court's civil standing order. (ECF No. 4.)

[2] The Court denies Schindler's motion for leave to file a reply (ECF No. 67), finding that the issues are adequately briefed. *See* LR 16-3(a) ("Replies will be allowed only with leave of the court.").

Hanhtrinh M. Le (ECF No. 50); denies Schindler's motion in limine to exclude opinion testimony of Joseph Stabler (ECF No. 52); denies Schindler's motion in limine to exclude causation opinion testimony of William Reid and Joel Norman (ECF No. 53); and grants Schindler's motion in limine to exclude opinion testimony of Michael Freeman (ECF No. 54).

## II. BACKGROUND

The following facts are taken from the Complaint. (ECF No. 1.)

On July 19, 2014, while Deatherage and his nephew were riding in an elevator at Harvey's Lake Tahoe Resort and Casino ("Harvey's"), the elevator purportedly dropped rapidly before violently coming to a stop. As a result, Deatherage claims he sustained pre-impact terror, severe and permanent back injury, extreme pain to his groin and leg, and continuing physical pain and emotional distress including loss of enjoyment of life. Deatherage claims he then received multiple epidural injections, physical therapy, and eventually spinal fusion surgery, to treat his back pain.

At the time of the incident, Schindler provided preventative maintenance to the elevators located at Harvey's premises pursuant to an agreement with Harvey's.

Deatherage now asserts two claims for relief against Schindler: (1) negligence for failure to exercise reasonable care so as to ensure the safety of Harvey's guests and other users of the elevators located at Harvey's and (2) res ipsa loquitur. Deatherage also alleges that Schindler acted with reckless disregard of human safety, "constituting malice under NRS [§] 42.005(1)," which entitles him to an award of punitive damages. (ECF No. 1 at 4.) Deatherage initially asserted a claim against Schindler for common carrier negligence, but the Court previously granted summary judgment in favor of Schindler on that claim. (ECF No. 41 at 15.)

## III. LEGAL STANDARD

A motion in limine is a procedural mechanism made in advance to limit testimony or evidence in a particular area. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). It is a preliminary motion that is entirely within the discretion of the Court. *See Luce*

*v. United States*, 469 U.S. 38, 41-42 (1984). To exclude evidence on a motion in limine, the evidence must be "inadmissible on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge . . . [who] may always change h[er] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Only evidence that is relevant is admissible. Fed. R. Evid. 402. But even relevant evidence may be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfairly prejudicial" evidence is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Gonzalez-Flores,* 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

///

///

## IV. DEATHERAGE'S MOTION IN LIMINE TO BAR TESTIMONY OF HANHTRINH M. LE (ECF NO. 50)

Schindler intends to offer an expert—Hanhtrinh M. Le—to testify about the mechanical load placed on Deatherage's lumbar spine during the elevator's abrupt stop. (*See* ECF No. 50 at 1; ECF No. 50-1.) Le first will quantify the load, then contextualize it by comparing it to the load placed on the lumbar spine during everyday activities like standing, walking, running, and bending over. (*See* ECF No. 50-1 at 10.) Deatherage argues that Le's testimony should be excluded because it is (1) irrelevant; (2) unduly prejudicial under Fed. R. Evid. 403; and (3) barred by Nevada law. (*See* ECF No. 50 at 4-10.) The Court finds Deatherage's arguments unpersuasive and will deny the motion.

### A. Relevance

Fed. R. Evid. 702 requires that expert testimony is "both relevant and reliable." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)).

Deatherage disputes only the relevance of Le's testimony, arguing that it is irrelevant and unhelpful to the jury because it is not medical in nature. (*See, e.g.*, ECF No. 50 at 5.) Schindler responds that Le's testimony is relevant even though it is not medical in nature because it will help the jury to quantify and contextualize the forces acting upon Deatherage's body when the elevator abruptly stopped, thereby enabling them to determine whether the elevator's abrupt stop could have caused Deatherage's injuries in the first place. (*See* ECF No. 64 at 1.) Schindler also argues that Le's testimony will help the jury understand the testimony of other experts who will discuss mechanical loads. (*Id.* at 1-2.)

The Court agrees with Schindler that Le's testimony could "help the [jury] to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. One of the facts at issue is whether the elevator's abrupt stop could have caused Deatherage's injuries. Le's testimony may demonstrate to jurors that the elevator's abrupt stop could not have caused Deatherage's injuries. In addition, Le's testimony will "assist the jury in

understanding the testimony of [other experts] who offer opinions as to the accelerations of the elevator at the time of the incident and the resulting lumbar spine loading experienced by [Deatherage]." (ECF No. 64 at 1-2.)

### B. Fed. R. Evid. 403 Analysis

Fed. R. Evid. 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Deatherage argues that the probative value of Le's testimony is "nonexistent" and that there is a substantial danger of unfair prejudice and misleading the jury. (ECF No. 50 at 7-8.) Schindler does not directly address these arguments. (*See* ECF No. 64.)

Considering the probative value of Le's testimony first, the Court finds that the probative value is significant because it could help the jury determine whether the elevator's abrupt stop could have caused Deatherage's injuries and could help the jury to understand opinions offered by other experts in the case. Any prejudice to Deatherage's case that results from Le's testimony would not be unfair because it would be the natural result of credible expert testimony. *See Gonzalez-Flores,* 418 F.3d at 1098. Furthermore, Le's testimony is not misleading because Le will not identify specific events other than the elevator's abrupt stop that could have caused Deatherage's injuries.

Deatherage's argument that Le's testimony has no probative value is unpersuasive because Deatherage divorces aspects of Le's testimony from their context. Deatherage argues that Le's testimony regarding the force of everyday activities is irrelevant because Le will not testify that one of those everyday activities—as opposed to the elevator's abrupt stop—caused Deatherage's injuries. (*See* ECF No. 50 at 7-8.) However, Le's testimony about the force of everyday activities will contextualize her testimony about the forces acting on Deatherage's lumbar spine. Le's testimony will thus elucidate whether the elevator's abrupt stop could have placed enough load on Deatherage's lumbar spine to
///

cause his injuries and will help jurors to understand the testimony of other experts who will discuss mechanical loads.

### C. Nevada Law

Deatherage argues that Le's testimony is inadmissible because Nevada requires medical experts who testify about causation to state their opinion to a reasonable degree of medical probability. (ECF No. 50 at 9 (citing *Morsicato v. Sav-On Drug Stores, Inc.*, 111 P.3d 1112 (Nev. 2005).) Schindler does not expressly address this argument. (*See* ECF No. 64.) This argument is inapposite because Le is not providing expert testimony of a medical nature. (*See* ECF No. 50 at 6 ("Ms. Le is not licensed in any capacity as a medical professional. She does not intend to offer medical opinions in this case and would not, moreover, be qualified to do so in a court of law. The only medical experts at trial will be those retained by the Plaintiff.").)

Accordingly, Deatherage's motion in limine to exclude opinion testimony of Hanhtrinh M. Le will be denied.

## V. SCHINDLER'S MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF JOSEPH STABLER (ECF NO. 52)

Deatherage intends to offer an elevator maintenance expert—Joseph Stabler—to testify that Schindler negligently failed to maintain and adequately repair the elevator in which Deatherage fell. (ECF No. 60 at 2.) Schindler argues that Stabler's testimony should be excluded because (1) Stabler is not qualified to render opinions on medical causation and (2) Stabler's testimony is not based on sufficient facts or data and is not the product of reliable principles and methods. (ECF No. 52 at 3-8.) The Court finds these arguments unpersuasive and will deny Schindler's motion.

### A. Stabler's Qualification to Render Opinions on Medical Causation

Schindler first argues that Stabler is not qualified to conduct an injury causation analysis because he is not a medical expert. (ECF No. 52 at 3.) However, Deatherage intends to offer Stabler as an expert to testify about Schindler's negligence regarding the maintenance and repair of the elevator in question. (ECF No. 60 at 2.) Deatherage "does

not intend to ask Mr. Stabler whether or not the elevator malfunction injured Mr. Deatherage." (*Id.*) Given that Deatherage does not intend to elicit testimony from Stabler regarding injury causation specifically, Schindler's argument is unpersuasive.

### B. Reliability of Stabler's Testimony

Schindler further argues that Stabler's proposed opinions regarding alleged improper maintenance should be excluded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), because (1) he does not know what particular components of the elevator failed and (2) he did not conduct testing.[3] (ECF No. 52 at 5.) Deatherage does not directly address this argument and instead argues that the Court has already determined that Stabler's opinions will go to the jury. (ECF No. 60 at 2-3.)

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court provided additional guidance on Rule 702 and its application in *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Court held that scientific testimony must be reliable and relevant to be admissible. *Daubert*, 509 U.S. at 589. *Kumho Tire* clarified that *Daubert*'s principles also apply to technical and specialized knowledge. *See Kumho*, 526 U.S. at 141. The trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Id.* at 152. The "test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141.

///

---

[3]Schindler's claim that Stabler conducted no testing appears to be hyperbole given that Schindler references "[t]he testing [Stabler] did eventually conduct after drafting his report." (ECF No. 52 at 5.)

7

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations and internal quotation marks omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion has a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and internal quotation marks omitted). Shaky but admissible evidence should not be excluded but instead attacked by cross-examination, contrary evidence, and attention to the burden of proof. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.), *as amended* (Apr. 27, 2010).

Setting aside Deatherage's argument, Schindler's arguments relate to the weight—not the admissibility—of Stabler's opinion testimony. Schindler does not explain how Stabler's methodology was unreliable, nor does Schindler explain how the lack of testing necessarily resulted in insufficient or unreliable data. (*See* ECF No. 52 at 5-8.) Even without testing the elevator, Stabler could opine that negligent maintenance and repair of the elevator could cause it to abruptly stop.

Accordingly, Schindler's motion in limine to exclude opinion testimony of Joseph Stabler will be denied.

**VI. SCHINDLER'S MOTION IN LIMINE TO EXCLUDE CAUSATION OPINION TESTIMONY OF WILLIAM REID AND JOEL NORMAN (ECF NO. 53)**

Deatherage intends to introduce testimony by his treating physicians—Dr. William Reid and Dr. Joel Norman (collectively, "Treating Physicians")—that Deatherage's injuries were caused by the elevator's abrupt stop. (ECF No. 61 at 3.) Schindler argues (1) that the Treating Physicians are not qualified to offer an opinion about causation and (2) any opinion they would offer does not result from the application of reliable principles and methods. (ECF No. 53 at 5-6.) The Court finds Schindler's arguments unpersuasive and will deny the motion.

### A. Qualifications

Schindler first argues that the Treating Physicians are not qualified to offer opinions on causation because they do not know how fast the elevator was going when it abruptly stopped or the nature of the malfunction. (ECF No. 53 at 5.) Deatherage essentially argues that these facts bear on the weight of the Treating Physicians' testimony rather than its admissibility. (ECF No. 61 at 6.)

The Court agrees with Deatherage that the Treating Physician's knowledge of the elevator malfunction goes to the weight of their testimony. Schindler relies heavily on *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1203 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010), to support its position, but "[t]he *Neal-Lomax* holding is limited to products liability cases." *Hulihan v. Reg'l Transp. Comm'n of S. Nev.*, 833 F. Supp. 2d 1226, 1233 (D. Nev. 2011), *aff'd*, 582 F. App'x 727 (9th Cir. 2014).

### B. *Daubert*

Schindler further argues that the Treating Physicians' opinions are excludable under *Daubert* because they are not the product of reliable principles and methods. (ECF No. 53 at 6.) However, Schindler does not identify a particular principle or method that the Treating Physicians use and explain how that principle or method is unreliable. Rather, Schindler argues that the Treating Physicians base their opinion that the elevator accident caused Deatherage's injuries solely on the temporal proximity of the two events. (*See* ECF No. 53 at 6-8.) Schindler argues that negligence opinions based solely on temporal proximity are excludable. (ECF No. 53 at 4 (citing *Goodwin v. Danek Med., Inc.*, No. CV-S-95-433-HDM(RJJ), 1999 WL 1117007, at *1 (D. Nev. July 8, 1999).) Deatherage counters that the doctors additionally rely on Deatherage's medical history, their own experience, medical literature, and their review of Deatherage's MRI films and treatment records. (ECF No. 61 at 4-5.) Given that the Treating Physicians relied on more than temporal proximity to reach their conclusions, Schindler's argument is unpersuasive.

Accordingly, Schindler's motion in limine to exclude opinion testimony of William Reid and Joel Norman will be denied.

## VII. SCHINDLER'S MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF MICHAEL FREEMAN (ECF NO. 54)

Deatherage seeks to introduce a medical scientist—Michael Freeman—to testify that Deatherage's injuries likely were the result of the elevator's abrupt stop. (ECF No. 63 at 3.) Schindler argues that Freeman is not qualified to offer opinions on what caused Plaintiff's injuries because he does not understand how elevators work; his methodology is unreliable; and the application of his methodology was flawed. (ECF No. 54 at 4-14.) The Court will grant the motion because Freeman did not reliably apply his methodology.

Freeman describes his methodology as a three-part inquiry:

1) Whether the injury mechanism had the potential to cause the injury in question (general causation):
2) The degree of temporal proximity between the injury mechanism and the onset of the symptoms reasonable indicating the presence of the injury; and
3) Whether there is a *more likely* alternative explanation for the occurrence of the symptoms at the same point in time (differential etiology/diagnosis).

(ECF No. 54-1 at 7-8.) Schindler argues that Freeman did not apply his methodology reliably for a number of reasons (*see* ECF No. 54 at 11-14), but the Court will focus on the application of the third step—differential diagnosis—as Freeman's application of that step critically undermines the reliability of his opinion.

A reliable differential diagnosis depends on two steps. "The first step in the diagnostic process is to compile a comprehensive list of hypotheses that might explain the set of salient clinical findings under consideration." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir.), *as amended on denial of reh'g* (Sept. 25, 2003). "[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may . . . be unreliable." *Id.* at 1058. The second step requires the expert "to engage in a process of elimination, eliminating hypotheses on the basis of a continuing examination of the evidence so as to reach a conclusion as to the most likely cause of the findings in that particular case." *Id.*

///

Here, Freeman erred at both steps. In the first step, Freeman did not compile a comprehensive list of hypotheses—he identified the elevator's abrupt stop as the sole possible cause of Deatherage's injuries. (ECF No. 54-1 at 10.) It is inconceivable that the elevator's abrupt stop would be the sole possible cause of Deatherage's injuries when Freeman's expert report expressly states that physical activity as slight as "a cough or a stumble" could cause herniation. (*Id.* at 8.) Freeman's failure to generate a comprehensive list of hypotheses at the first step tainted the second. Rather than ruling out specific events that could have caused Deatherage's injuries, Freeman simply opined that it was unlikely Deatherage would have received injuries from anything other than the elevator's abrupt stop. (*Id.* at 11.)

Accordingly, Schindler's motion in limine to exclude opinion testimony of Michael Freeman will be granted.

**VIII.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Schindler's motion for leave to file a reply (ECF No. 67) is denied.

It is further ordered that Deatherage's motion in limine to bar testimony of Hanhtrinh M. Le (ECF No. 50) is denied.

It is further ordered that Schindler's motion in limine to exclude opinion testimony of Joseph Stabler (ECF No. 52) is denied.

It is further ordered that Schindler's motion in limine to exclude causation opinion testimony of William Reid and Joel Norman (ECF No. 53) is denied.

///

///

///

It is further ordered that Schindler's motion in limine to exclude opinion testimony of Michael Freeman (ECF No. 54) is granted.

DATED THIS 29th day of June 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE